CADES SCHUTTE LLP
A Limited Liability Law Partnership

THEODORE D. C. YOUNG    5735-0
ELIJAH YIP    7325-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4212
Telephone: (808) 521-9200
Fax: (808) 540-5072
Email: tyoung@cades.com

Attorneys for Plaintiffs
STEPHANIE A. BRITT and
WILLIAM G. BRITT



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>JAMES WILLIAM LULL,<br><br>        Debtor. | CASE NO. 06-00898 (Chapter 7) |
| STEPHANIE A. BRITT and<br>WILLIAM G. BRITT,<br><br>        Plaintiffs,<br><br>v.<br><br>JAMES WILLIAM LULL,<br><br>        Defendant. | Adversary Proceeding No. 07-90037<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT<br><br>**HEARING:**<br>DATE:    October 25, 2007<br>TIME:    10:30 a.m.<br>JUDGE:    Honorable Lloyd King<br><br>Trial Date: None |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On September 25, 2007, Plaintiffs Stephanie A. Britt and William G. Britt (collectively, *"Plaintiffs"* or the *"Britts"*) filed their Motion For Summary Judgment on Their Complaint to Determine Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a) (the *"Motion"*). Defendant James W. Lull (*"Lull"*) did not file a response to the Motion. The Motion came on for hearing before the Honorable Lloyd King on October 25, 2007. Theodore D. C. Young, Esq. appeared on behalf of Plaintiffs. Lull did not make an appearance at the hearing.

Based on the Motion submitted by Plaintiffs and their counsel, the attached memorandum, declarations, and exhibits, and being otherwise fully advised, the Court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

1. In or about December 2005, Lull visited the Britts in their Kaua'i home to discuss potential investment opportunities. Declaration of Stephanie Britt (*"S. Britt Decl."*) at ¶ 2; Declaration of William Britt (*"W. Britt Decl."*) at ¶ 2. At that time, Lull was the branch manager of the Kapa'a, Hawaii branch of U.S. Financial Mortgage Corp. (*"U.S. Financial"*), a mortgage brokerage company, and he represented to the Britts as such. Transcript of

2

U.S. Bankruptcy Court - Hawaii  #07-90037  Dkt # 28  Filed 12/05/07  Page 2 of 15

Creditors' Meeting of 1/9/07 ("*Tr. Cred. Mtg. 1/9/07*"; attached to Motion as Exhibit "A") at 31:16-17; S. Britt Decl. at ¶3; W. Britt Decl. at ¶ 3.

2.  The Britts advised Lull that they were interested in short-term investments with a rate of return that was higher than what they could obtain with a conventional savings account. S. Britt Decl. at ¶ 5; W. Britt Decl. at ¶ 5. The Britts emphasized to Lull that it was imperative that any investment they made be capable of being liquidated in a short amount of time, as the funds they would invest were proceeds from the sale of their former home, and that they needed the funds to build their new home on Kaua'i in or around July 2006. S. Britt Decl. at ¶ 5; W. Britt Decl. at ¶ 5.

3.  Lull identified several investment opportunities involving funding "bridge loans" to complete real estate transactions. S. Britt Decl. at ¶ 6; W. Britt Decl. at ¶ 6. He represented to the Britts that U.S. Financial was involved in the real estate transactions. S. Britt Decl. at ¶ 6; W. Britt Decl. at ¶ 6.

4.  Two of the so-called investment opportunities presented by Lull were of interest to the Britts. S. Britt Decl. at ¶ 6; W. Britt Decl. at ¶ 6. The first investment involved financing in connection with the acquisition of real property in Maui by Dela Marie Barino (the "*Barino Transaction*"). Transcript of Creditors' Mtg. of 2/8/07 ("*Tr. Cred. Mtg. 2/8/07*"; attached to Motion as Exhibit "B") at 72:6-12; S. Britt Decl. at ¶ 6; W. Britt Decl. at ¶ 6. The second investment

3

involved financing in connection with the completion of a residence in Kauaʻi by Michael and Lani McLychok (the "*McLychok Transaction*"). S. Britt Decl. at ¶ 6; W. Britt Decl. at ¶ 6.

5. Lull represented to the Britts that U.S. Financial was financing the Barino Transaction and the McLychok Transaction, and that the bridge loans would facilitate the completion of the transactions. Tr. Cred. Mtg. 1/9/07 at 109:17 to 110:8; S. Britt Decl. at ¶ 7; W. Britt Decl. at ¶ 7.

6. Lull represented to the Britts that the bridge loans he was proposing had an "extremely quick turnaround," and that the Britts would be repaid their loans in several months, with interest at the rate of 12% per annum. Deposition of James W. Lull of 5/22/07 ("*Lull Depo.*"; attached to Motion as Exhibit "C") at 310:8-10; S. Britt Decl. at ¶ 8; W. Britt Decl. at ¶ 8.

7. Specifically, Lull represented to the Britts that the Barino Transaction and the McLychok Transaction would close on time, that the bridge loan in the connection with the Barino Transaction would be repaid by July 2006, and that the bridge loan in connection with the McLychok Transaction would be repaid within two to four months. S. Britt Decl. at ¶ 9; W. Britt Decl. at ¶ 9.

8. To mislead and wrongfully induce the Britts into believing that there was little to no risk involved in investing in the short-term loans, Lull represented to the Britts that if the Barino Transaction and/or the McLychok

4

Transaction did not close on time, Lull and/or U.S. Financial would repay to Britts the money they invested and assume the short-term loans. S. Britt Decl. at ¶ 10; W. Britt Decl. at ¶ 10.

9. Lull also presented to the Britts documents purporting to evidence the purported legitimacy of the investment opportunities he was proposing to them. S. Britt Decl. at ¶ 10; W. Britt Decl. at ¶ 10.

10. In reliance on Lull's representations, the Britts agreed to fund the bridge loans for the Barino Transaction and the McLychok Transaction. S. Britt Decl. at ¶ 11; W. Britt Decl. at ¶ 11.

11. Lull requested that the Britts fund the loans with checks payable to Lull. S. Britt Decl. at ¶ 11; W. Britt Decl. at ¶ 11. Lull represented to the Britts that the funds drawn on the checks would be used to finance the Barino Transaction and McLychok Transaction, respectively. S. Britt Decl. at ¶ 11; W. Britt Decl. at ¶ 11.

12. In reliance on Lull's representations, on or about January 3, 2006, the Britts gave a check to Lull in the amount of $300,000 (First Hawaiian Bank Check #114) (the "*Barino Loan*") with the understanding that Lull would use the proceeds to finance the Barino Transaction. Exhibit "D" to Motion; S. Britt Decl. at ¶ 12; W. Britt Decl. at ¶ 12.

5

13. In consideration for the Barino Loan, Lull provided to the Britts a promissory note dated January 3, 2006 in the principal amount of $300,000.00 (the "***Barino Note***"). Exhibit "E" to Motion; Lull Depo. at 311:19 to 312:8; S. Britt Decl. at ¶ 13; W. Britt Decl. at ¶ 13. The Barino Note stated that Lull promised to pay the principal amount of $300,000 plus interest of 12% per annum by July 1, 2006, with monthly payments coming due on the fifth of each month beginning on February 5, 2006. Exhibit "E" to Motion; S. Britt Decl. at ¶ 13; W. Britt Decl. at ¶ 13.

14. In reliance on Lull's representations, on or about January 17, 2006, the Britts gave a check to Lull in the amount of $200,000 (First Hawaiian Bank Check #119) (the "***McLychok Loan***") with the understanding that Lull would use the proceeds to finance the McLychok Transaction. Exhibit "F" to Motion; S. Britt Decl. at ¶ 14; W. Britt Decl. at ¶ 14.

15. In consideration for the McLychok Loan, Lull provided to the Britts a promissory note dated January 17, 2006 in the principal amount of $200,000 (the "***McLychok Note***"). Exhibit "G" to Motion; Lull Depo. at 323:22 to 324:11; S. Britt Decl. at ¶ 15; W. Britt Decl. at ¶ 15. The McLychok Note stated that Lull promised to pay the principal amount of $200,000 plus interest of 12% per annum by July 1, 2006, with monthly payments coming due on the fifth of each

month beginning on February 5, 2006. Exhibit "G" to Motion; S. Britt Decl. at ¶ 15; W. Britt Decl. at ¶ 15.

16. After the Britts made the Barino Loan and McLychok Loan (collectively, the *"Loans"*) to Lull, Lull sent an undated letter on U.S. Financial letterhead to the Britts acknowledging the two loans and affirming that the loans would be repaid "within two to four months, with Mcclychock coming back first." Exhibit "H" to Motion; S. Britt Decl. at ¶ 16; W. Britt Decl. at ¶ 16. Lull signed the letter in his capacity as the branch manager of U.S. Financial. Exhibit "H" to Motion.

17. On several other occasions, Lull used U.S. Financial stationery to write notes to the Britts concerning the Loans, thus creating the false impression that the Loans were bona fide investments, when actually they were not. Exhibits "I," "J," and "K" to Motion; S. Britt Decl. at ¶ 17; W. Britt Decl. at ¶ 17.

18. Lull did not use the Loan proceeds for the Barino Transaction or McLychok Transaction, but instead, deposited the proceeds into his personal bank account and used the proceeds to pay off his pre-existing debts. Tr. Cred. Mtg. 1/9/07 at 109:17 to 110:14 and 113:8-10; Lull Depo. at 313:6 to 314:1, 323:22 to 325:3.

19. Lull promised the Britts that, as security for the Barino Note and McLychok Note (collectively, the *"Notes"*), he would grant them a mortgage

7

interest in the real property that is the subject of the McLychok and Barino Transactions. Tr. Cred. Mtg. 1/9/07 at 111:20-23; Lull Depo. at 311:9-14; S. Britt Decl. at ¶ 18; W. Britt Decl. at ¶ 18. Contrary to Lull's promise, the Britts never received any mortgage interest to secure the Notes. Tr. Cred. Mtg. 1/9/07 at 111:20-25; S. Britt Decl. at ¶ 18; W. Britt Decl. at ¶ 18. Lull actually did not own an interest in the real property that was the subject of the purported McLychok and Barino Transactions, and so he was in no position to grant the Britts the mortgage interests he promised. Tr. Cred. Mtg. 1/9/07 at 112:1-6.

20. Lull falsely represented to the Britts that U.S. Financial was involved in the Barino and McLychok transactions, or that the transactions even existed. Tr. Cred. Mtg. 1/9/07 at 111:12-14.

21. Lull's investment proposal to the Britts was part of fraudulent scheme in which Lull would solicit investors for high-interest bridge loans in connection with purported real estate transactions and then use the proceeds of the bridge loans to repay his pre-existing debts. Tr. Cred. Mtg. 2/8/07 at 27:21 to 31:10.

22. Lull did not repay the principal amounts owed under the Notes on or before July 1, 2006 as he had represented and promised to the Britts, and has been delinquent on monthly interest payments on the Notes since July 2006. S.

8

U.S. Bankruptcy Court - Hawaii #07-90037 Dkt # 28 Filed 12/05/07 Page 8 of 15

Britt Decl. at ¶ 19; W. Britt Decl. at ¶ 19. Lull had no intention of repaying the Notes at the time he executed the Notes.

23. In early August 2006, the Britts contacted Lull regarding repayment of the Loans. S. Britt Decl. at ¶ 20; W. Britt Decl. at ¶ 20. On or about August 12, 2006, Lull represented to the Britts that he was going to send them copies of the closing statements for the Barino Transaction and the McLychok Transaction. S. Britt Decl. at ¶ 20; W. Britt Decl. at ¶ 20. The Britts never received said closing statements. S. Britt Decl. at ¶ 20; W. Britt Decl. at ¶ 20.

24. On or about August 12, 2006, in furtherance of his fraudulent scheme, Lull tendered a check (Central Pacific Bank Check #1119) ("***Check #1119***") to Stephanie Britt in the amount of $517,500, in payment of his obligations under the Notes. Exhibit "L" to Motion; S. Britt Decl. at ¶ 21; W. Britt Decl. at ¶ 21. The Britts deposited Check #1119 at the Princeville branch of First Hawaiian Bank on or about August 14, 2006. S. Britt Decl. at ¶ 21; W. Britt Decl. at ¶ 21. That same day, Lull represented to the Britts that there were sufficient funds in his account for Check #1119 to clear. The next day, the branch manager of the Princeville branch of First Hawaiian Bank notified the Britts that Check #1119 was being returned for insufficient funds. S. Britt Decl. at ¶ 21; W. Britt Decl. at ¶ 21.

9

25. On or about August 16, 2006, Lull represented to the Britts that he was selling coins at an auction held by Bowers and Merena Auctions in California. S. Britt Decl. at ¶ 22; W. Britt Decl. at ¶ 22. According to Lull, the coins could be sold for well over $1 million. S. Britt Decl. at ¶ 22; W. Britt Decl. at ¶ 22. Lull further represented to the Britts that he would use the proceeds from the auction sale to repay the Notes. S. Britt Decl. at ¶ 22; W. Britt Decl. at ¶ 22. At the time he made those representations to the Britts, Lull had already pledged the proceeds of the coin auction to multiple creditors besides the Britts. S. Britt Decl. at ¶ 22; W. Britt Decl. at ¶ 22.

26. Despite demand, Lull has not repaid the principal amount of the Notes, and is delinquent in interest payments and late charges due and owing under the Notes as follows:

A. Lull has not repaid any of the principal amounts of the Notes, nor has he made any monthly interest payments under the Notes since July 2006. S. Britt Decl. at ¶ 23; W. Britt Decl. at ¶ 23.

B. The Notes also provide that Lull is liable for late charges equal to 5% of each monthly interest payment that is not paid within 10 calendar days after the payment comes due on the 5th of the month. Exhibits "E" and "G" to Motion; S. Britt Decl. at ¶ 24; W. Britt Decl. at ¶ 24. Lull has not paid any late charges. S. Britt Decl. at ¶ 23; W. Britt Decl. at ¶ 23.

10

C.  As of September 21, 2007, Lull owes principal, interest, and late charges of $364,643.84 under the Barino Note and principal, interest, and late charges of $243,095.89 under the McLychok Note, for a total of $607,739.73. S. Britt Decl. at ¶ 23; W. Britt Decl. at ¶ 23. Interest is accruing at the rate of $98.63 per day under the Barino Note and at the rate of $65.75 per day under the McLychok Note. S. Britt Decl. at ¶ 24; W. Britt Decl. at ¶ 24.

27.  On or about December 8, 2006, Lull filed a voluntary petition of bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawai'i.

28.  On or about June 15, 2007, Plaintiffs filed a Complaint to Determine Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a) and for damages.

29.  If any of the foregoing findings of fact shall be deemed a conclusion of law, the Court intends that every such finding be construed as a conclusion of law.

## II. CONCLUSIONS OF LAW

### A. Non-dischargeability Pursuant to Section 523(a)(2)(A).

1.  Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt is non-dischargeable if it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a

false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." 11 U.S.C. § 523(a)(2)(A). In order to establish that a debt is non-dischargeable under § 523(a)(2)(A), a creditor must establish five elements by a preponderance of the evidence: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. The Britts have proven each element with a preponderance of the evidence.

2. The first element is satisfied because Lull obtained the Loan proceeds from the Britts by false pretenses, false representations, or actual fraud.

3. Lull's fraudulent conduct toward the Britts was part of a pattern and practice of persuading people to invest in high-interest, short-term loans and then using the loan proceeds for purposes other than their purported purposes.

4. The second and third elements are satisfied because Lull acted knowingly with fraudulent intent toward the Britts.

5. The fourth element is satisfied because the Britts justifiably relied on Lull's false and deceptive conduct and representations about the investment opportunities that Lull presented to them in agreeing to fund the Loans.

U.S. Bankruptcy Court - Hawaii  #07-90037  Dkt # 28  Filed 12/05/07  Page 12 of 15

6. The fifth element is satisfied because the Britts have been damaged by their reliance on Lull's representations.

7. Lull's debt under the Notes is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) as a matter of law.

### B. Non-dischargeability Pursuant to Section 523(a)(4).

8. Section 523(a)(4) of the Bankruptcy Code provides that a debt is non-dischargeable if it is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4).

9. Larceny is the fraudulent taking and carrying away of the property of another with the intent to convert such property to his own use without the consent of another.

10. Lull committed larceny toward the Britts.

11. Lull's debt under the Notes is non-dischargeable under 11 U.S.C. § 523(a)(4) as a matter of law.

### C. Non-dischargeability Pursuant to Section 523(a)(6).

12. Section 523(a)(6) of the Code provides that a debt is non-dischargeable if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6).

13. For an injury to be "willful and malicious" within the meaning of 11 U.S.C. § 523(a)(6), it must have been committed deliberately or intentionally

13

to cause injury. The intent requirement is met when the debtor either had a subjective motive to inflict injury or the debtor believed that injury was substantially certain to occur as a result of his conduct. Where an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6).

14. Lull engaged in tortious conduct resulting in willful and malicious injury by committing fraud to obtain the Britts' life savings.

15. Lull also committed the tort of conversion, which qualifies as a "willful and malicious injury." Conversion is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights.

16. Lull's debt under the Notes is non-dischargeable under 11 U.S.C. § 523(a)(6) as a matter of law.

D. **Attorneys' Fees and Costs.**

17. Paragraph 4(c) of the Notes provides that the debtor shall pay the lender all reasonable attorneys' fees and costs incurred to enforce repayment of payments due under the Notes.

18. A creditor who is a successful plaintiff under 11 U.S.C. § 523(a)(2) is entitled to an award of its attorneys' fees where a contractual provision for attorneys' fees would support a fee award in a state law fraud action based on the agreement.

14

19. Hawai'i Revised Statutes § 607-14 provides, in relevant part:

> In all courts, in all actions . . . on a promissory note or other contract in writing that provides for attorneys' fees, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable . . . provided that this amount shall not exceed twenty-five percent of the judgment.

Haw. Rev. Stat. § 607-14. Accordingly, under Hawai'i law, Plaintiffs would be entitled to their attorneys' fees if they were to bring an action against Lull based on the Notes.

20. Plaintiffs are entitled to an award of their attorneys' fees in an amount not exceeding twenty-five percent of the judgment.

21. Plaintiffs are entitled to an award of costs pursuant to Fed. R. Bankr. P. 7054.

22. If any of the foregoing conclusions of law shall be deemed a finding of fact, the Court intends that every such conclusion be construed as a finding of fact.

DATED: Honolulu, Hawai'i, Dec. 5, 2007.

_____
UNITED STATES BANKRUPTCY JUDGE

===============================================================================
*Stephanie A. Britt and William G. Britt v. James William Lull (In re James William Lull)*, CASE NO. 06-00898 (Chapter 7); Adversary Proceeding No. 07-90037; FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
===============================================================================

ImanageDB:782369.2